**O**

# United States District Court
# Central District of California

| | |
|---|---|
| DAVID TOTTEN, | Case № 5:15-cv-01876-ODW-KKx |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND** |
| KELLOGG BROWN & ROOT, LLC; | **DENYING IN PART DEFENDANT'S** |
| DOES 1–10, inclusive, | **MOTION TO COMPEL** |
| Defendants. | **ARBITRATION [12]** |

## I.   INTRODUCTION

This action arises out of a series of employment disputes that Plaintiff David Totten ("Totten") originally sought to have litigated against his employer, Defendant Kellogg Brown & Root, LLC ("KBR"), in San Bernardino Superior Court.  (ECF No. 1.)  KBR now moves to enforce the arbitration provision of its Dispute Resolution Program.   For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel Arbitration, and **STAYS** those claims for which this Motion is granted.[1]  (ECF No. 12.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

### a.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

KBR hired Plaintiff on January 16, 2012.  (Mot., Bynum Decl. ¶ 6.)  During Totten's new hire orientation, he signed an acknowledgment of and agreement to be bound by the terms KBR's Dispute Resolution Program ("DRP" or "Program").  (Signed Agreement, Bynum Decl., Ex. B.)  As part of KBR's new hire orientation, KBR briefed Totten on the Program and provided him with the opportunity to ask any questions before signing and agreeing to be bound by the Program.  (Bynum Decl. ¶¶ 7–9.)

KBR terminated Totten's employment on June 24, 2014 for job abandonment after Totten failed to call or show for eleven days prior to his discharge.  (*Id*. ¶ 10.)

On June 9, 2015, Totten filed suit in Santa Barbara Superior Court alleging retaliation, discrimination, and wrongful termination under Cal. Gov't Code § 12940 *et seq.*, Cal. Labor Code § 1102.5, and Cal. Gov't Code § 12945.2.  (First Amended Complaint ("FAC") ¶¶ 10–15, ECF No. 1.)

On September 11, 2015, KBR properly removed the case to this Court based on diversity jurisdiction, and subsequently filed this Motion to Compel Arbitration.  (ECF Nos. 1, 12.)  On October 2, 2015, Totten filed his First Amended Complaint, and thereafter opposed the present Motion.  (ECF Nos. 17–18.)  KBR timely replied.  (ECF No. 23.)  The Motion is now before the Court for consideration.

### b.  THE DISPUTE RESOLUTION PROGRAM

At issue before the Court is KBR's arbitration program.   The Program's governing rules are set forth in a 35 page document entitled "Plan & Rules: The Road to Resolution."  (DRP, ECF No. 12-1.)  The Program adopts (as it must) the Federal Arbitration Act ("FAA") as the governing law.  (*Id*. 8)  Section 4(a) of the Program, entitled Resolution of Disputes, provides:

1
2

> All disputes not otherwise settled by the Parties shall be finally and conclusively resolved through arbitration under this Plan and the Rules, instead of through trial before a court….

3
4
5

(DRP 5.)  The Program further provides that the term "dispute" covers "all legal and equitable claims… with respect to… employment… between persons bound by the Plan." (*Id*. 2–3.)

6
7
8
9

Importantly, the Program specifically exempts Title VII claims from its control and provides that discovery shall be allowed and conducted under the supervision of the arbitrator.  (*Id*. 4–5, 15.)  Moreover, the Program allows the prevailing employee or applicant to seek attorneys' fees, where provided by law.  (*Id*. 25.)

10

### III.   LEGAL STANDARD

11
12
13
14
15
16
17
18
19
20
21

The Federal Arbitration Act is meant "to ensur[e] that private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2; *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration.  9 U.S.C. § 4.  Courts are then required to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement."  *Id.*

22
23
24
25
26
27

In determining whether parties must arbitrate their dispute, a court may not review the merits of the dispute.  *Cox*, 533 F.3d at 1119.  Courts are instead limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue."  *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

28

## IV.   DISCUSSION

Given that Totten has signed an agreement submitting to the Program and that the Program is, on its face, enforceable under the FAA, the Court will begin by examining Totten's arguments against enforcement.

Totten advances two specific arguments: 1) that his Title VII claims are not subject to the provision of the Program; and 2) that the Program itself is both procedurally and substantively unconscionable.  (Opp'n 4, 6.)

### a.  TITLE VII CLAIMS

Totten first argues that his Title VII claims, plead in his First Amended Complaint, are not subject to the provision of the Program and therefore are not subject to mandatory arbitration.  (*Id.* 5.)  The Court notes that the First Amended Complaint was filed after the present Motion, and only a few days before the Opposition was filed.  (ECF Nos. 12, 17–18.)  Nevertheless, Totten's amendment of the Complaint was proper under Federal Rule of Civil Procedure 15(a)(1)(B), which allows a party to amend a pleading after the service of various motions, including motions under Federal Rule of Civil Procedure 12(b).  As Totten correctly notes, motions to compel arbitration may be treated as motions under Rule 12(b).  *Buckly v. Gallo sales Co.*, 949 F.Supp. 737, 739-740 (N.D. Cal. 1996).  Therefore, the Court will not discount Totten's Title VII claims purely based on the timeliness of their inclusion.

KBR does not, and cannot, contend that Totten's Title VII claims are subject to the mandatory arbitration provision of the Program.  Controlling law aside, the Program itself specifically exempts Title VII claims from its control.  (DRP 4–5.)  However, KBR does make two arguments regarding Totten's newly plead Title VII claims.

First, KBR argues that the Court may not even consider Totten's Title VII claims, as Totten has failed to first exhaust his administrative remedies.  (Reply 2.)  The sufficiency of Totten's Title VII claims are not at issue in the matter at bar;

1   whether or not the claims have merit—or can proceed at all—is unrelated to whether
2   their resolution belongs before this Court or before an arbitrator.  The fact of the
3   matter is that they are Title VII claims, and the DRP specifically exempts them from
4   arbitration.  No further discussion is warranted.  The Court sees no need to
5   prematurely adjudicate the merits of these claims, and since they will remain before
6   this Court, KBR is free to file a properly noticed Motion to Dismiss based on Totten's
7   failure to exhaust administrative remedies.

8       Second, KBR alleges Totten's state claims (originally the basis of this lawsuit)
9   are not Title VII claims, and are not otherwise subject to an avoidance of arbitration.
10  (Reply 2.)  The point is clear—claims that are not expressly exempted from arbitration
11  may be subject to a mandatory arbitration provision pursuant to the FAA.  The Court
12  agrees: Totten's non-Title VII claims may be subject to arbitration.

13      **b.  PROCEDURAL AND SUBSTANTIVE UNCONSCIONABLITY**

14      Totten's second and primary argument is that the Program itself is both
15  procedurally and substantively unconscionable.  As Totten notes, for an arbitration
16  agreement to be unenforceable, it must be both procedurally and substantively
17  unconscionable.  *Armendariz v. Found. Health Psychare Serv. Inc.*, 24 Cal. 4th 83,
18  114 (2000).  The Court applies a sliding scale analysis when considering procedural
19  and substantive unconscionability.  *Id.*  The more egregious the Court finds one, the
20  less evident the other has to be.  *Id.*  As discussed below, the Court finds that neither
21  procedural nor substantive unconscionability is present with respect to the Program.

22      **1.  PROCEDURAL UNCONSCIONABILITY**

23      Totten makes two arguments with respect to procedural unconscionability.
24  First, he argues that the contract was one of adhesion, and therefore implicitly
25  procedurally unconscionable.  (Opp'n 7–8.)  Second, he argues that KBR's failure to
26  make available a copy of the Program to him renders it procedurally unconscionable.
27  (*Id.* 8–9.)

28      **A. Adhesion Contracts**

1    An adhesion contract is defined as "a standardized contract, which, imposed
2  and drafted by the party of superior bargaining strength, relegates to the subscribing
3  party only the opportunity to adhere to the contract or reject it."   *Gutierrez v.*
4  *Autowest, Inc.*, 114 Cal. App. 4th 77, 87–88 (2003) (citations omitted).   Further,
5  courts have often held that adhesion contracts (which are presented in a take-it-or-
6  leave-it manner and where there is a distinct difference in bargaining power) may be
7  procedurally unconscionable.   *Martinez v. Master Protection Corp.* 118 Cal. App. 4th
8  107, 114 (2004).

9    In the present case, unequal bargaining power was present because signing the
10 DRP was a condition of Totten's employment with KBR and, had Totten refused to
11 sign, he likely would have been refused the job.   *See Armendariz*, 24 Cal. 4th at 99
12 (2000) (stating that "in the case of preemployment arbitration contracts, the economic
13 pressure exerted by employers on all but the most sought-after employees may be
14 particularly acute, for the arbitration agreement stands between the employee and
15 necessary employment, and few employees are in a position to refuse a job because of
16 an arbitration requirement.")   KBR contends that an inequality of bargaining power
17 does not automatically render a contract procedurally unconscionable.   (Reply 3.)
18 They cite, among other cases, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20
19 (1991), which states that "[m]ere inequality in bargaining power… is not a sufficient
20 reason to hold that arbitration agreements are never enforceable in the employment
21 context."   *Id.* at 33.   Further, the court in *Brown v. DIRECTV, LLC*, No. 12-08382,
22 2103 WL 3273811 (C.D. Cal. June 16, 2013), noted that "[a]ny contract of adhesion is
23 minimally procedurally unconscionable, but absent other indicia of oppression or
24 surprise, a contract of adhesion has only a low degree of procedural
25 unconscionability."   *Id.* at *8.

26    Here, the Court finds that the subject arbitration agreement contains a low
27 degree of procedural unconscionability based upon the take it or leave it nature of the
28 agreement, which means that it would take a substantial showing of substantive

1  unconscionability to render the agreement unenforceable.  However, Totten presents a
2  second argument for procedural unconscionability, which the Court considers.

3  **B. Failure to Provide a Copy of a Contract**

4  Totten next argues that KBR's alleged failure to provide him with the rules of
5  the Program renders the Program procedurally unconscionable, and "[n]umerous cases
6  have held that the failure to provide a copy of the arbitration rules to which the
7  employee would be bound[] supported a finding of procedural unconscionability."
8  *Trivedi v. Curezo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010).  KBR refutes this
9  argument by noting that Totten confirmed, in writing, that he received and reviewed
10  the rules of the Program.   (Reply 4.)    The burden for proving procedural
11  unconscionability then shifts back to Totten: "When a party signs a document
12  agreeing that he/she has read the arbitration agreement, the burden shifts to them to
13  demonstrate they did not agree to arbitrate." *Ortiz v. Hobby Lobby Stores, Inc.*, 2:13-
14  CV-01619, 2014 WL 4961126, at *5 (E.D. Cal. Oct. 1, 2014) (quoting *Jackson v.
15  TIC—The Indus. Co.*, No. 1:13–cv–02088, 2014 WL 1232215, at *5 (E.D. Cal. Mar.
16  24, 2014)).

17  While the Court is mindful that human resources practices do not always
18  conform to the best practices of the field, and also acknowledges that Totten very well
19  may not have received a copy of the rules of the Program, it accepts that Totten's
20  signed statement is sufficient to place the burden on him to prove that he never agreed
21  to arbitration.  Totten has failed to do this, and this factor therefore weighs against a
22  finding of procedural unconscionability.  *See Morgan*, 2013 WL 2151656, at *3–4
23  (finding not procedurally unconscionable where arbitration rules not provided because
24  plaintiff signed acceptance form referencing rules); *Ortiz*, 2014 WL 4961126, at *6
25  (noting that rules of arbitral forum were easily accessible on internet); *Blau v. AT&T
26  Mobility*, No. C-11-00541, 2012 WL 10546, at **4–5 (N.D. Cal. Jan. 3, 2012)
27  (rejecting claim that plaintiffs did "not recall" seeing terms and explaining that
28  "[h]aving agreed to the terms of service, Plaintiffs are presumed to have read them");

1    *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236
2    (2012) ("arbitration clause ... may be binding on a party even if the party never
3    actually read the clause").

4         Because Totten signed an acknowledgment of the DPR and ultimately failed to
5    prove that he did not agree to arbitration, Totten's argument for procedural
6    unconscionability fails.

7         Because the unconscionability analysis calls for a sliding scale, *Armendariz*, 24
8    Cal. 4th at 114, the Court next turns to Totten's substantive unconscionability analysis
9    –and finds that the contract is in no way substantively unconscionable.

10        **2. SUBSTANTIVE UNCONSCIONABILITY**

11        Totten advances four arguments alleging substantive unconscionability: First,
12   that the discovery provision of the Program is inadequate.  Second, that the agreement
13   between Totten and KBR lacks mutuality.  Third, that the unilateral modification
14   provision renders the agreement illusory.  Lastly, that the attorneys' fee provision is
15   unacceptable.  The Court finds none of these arguments persuasive, as explained
16   below.

17        **A. Discovery Provision**

18        Totten claims that the discovery provision of the program, which allows for
19   arbitrator-determined discovery, provides for inadequate safeguards.[2]  (Opp'n 9.)
20   However, this argument is meritless.  In *Armendariz*, the California Supreme Court
21   made clear that "whether or not the employees in this case are entitled to the full range
22   of discovery ... they are at least entitled to discovery sufficient to adequately arbitrate
23   their statutory claim, including access to essential documents and witnesses, **as**
24   **determined by the arbitrator(s)**."  *See Armendariz*, 24 Cal. 4th at 106 (emphasis
25   added).

26

27   _____
     [2] Totten differentiates between the agreement he signed and the Program rules.  However, the
28   Agreement specifically makes reference to the Program as the governing rules, and the Court does
     not find a sufficient reason to view them separately.

Here, the DRP's provision makes clear that it places no formal limits on discovery.  DRP 15.  Instead, it specifically states that discovery may take any form permitted by the Federal Rules of Civil Procedure ("FRCP") and that the arbitrator has discretion to determine the form, amount, and frequency of discovery.  *Id.*

Because the DRP follows the rules set forth in the FRCP and does not by its terms limit the amount of discovery available to the parties, its discovery provisions do not give rise to substantive unconscionability.

**B. Mutuality**

Totten next argues that the agreement lacks mutuality, and is therefore substantively unconscionable.  (*Id.*)  There is simply no evidence to support this claim.  The Program rules clearly state that the arbitration provisions are applicable to both parties to the same extent (subject to the modification provisions, discussed below).  *See* DRP 6, 7, 9.

**C. Unilateral Modification**

Totten further argues that the Program's provisions allowing KBR to modify the Program rules unilaterally makes the program substantively unconscionable.  He specifically makes note of *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), which held that an employer's ability to modify an agreement after signing it renders the employee's ability to consider the terms of the agreement, essentially, null.  *Id.* at 1179.

However, KBR distinguished *Ingle* by correctly noting that the modification provisions there were not prospective; they could be enforceable for actions already commenced.  *Id.* Here, the DRP only allows for prospective amendments, which means that any amendments apply only to disputes initiated after the effective date of the amendment.  (DRP 7.)  It is a matter of well-settled law that arbitration agreements which allow a party to *prospectively* modify them are enforceable and not illusory.  *See Miguel v. JP Morgan Chase Bank, N.A.*, 12-3308, 213 WL 452418, *5-6 (C.D.

9

Cal. Feb. 5, 2013); *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th at 1199, 1214 (1998); *James G. Freeman & Associates, Inc. v. Tanner*, 56 Cal.App.3d 1, 10 (1976).

The DRP at issue also contains a thirty-day notice provision. *Id.* The Court is satisfied that a thirty-day notice of prospective modifications affords an employee sufficient protection against inequitable assertions of power. This provision therefore does not provide for substantive unconscionability.

### D. Attorneys' Fees

Totten's last argument regarding substantive unconscionability is that the attorneys' fee provision permits the arbitrator to award attorneys' fees to KBR, even where the law does not permit a court to enter such an award. However, this is not accurate. KBR correctly notes that the program allows for attorneys' fees only to a prevailing party and only as allowed under the applicable law. (DRP 25.) Totten's final argument is therefore without merit, and does not provide for substantive unconscionability.

## V.    CONCLUSION

In sum, because the Court finds no evidence of substantive unconscionability and only minimal procedural unconscionability, KBR's arbitration program is valid. For claims that may be properly brought before an arbitrator, the Court **GRANTS** KBR's Motion to Compel Arbitration. Those claims are therefore **STAYED**, and the parties are to notify the Court within seven (7) days of the conclusion of the arbitration proceedings. However, for the reasons discussed above, the Court **DENIES** KBR's Motion to Compel Arbitration as to the Title VII claims.

**IT IS SO ORDERED.**

February 10, 2016

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT**